**\*\*\* FOR PUBLICATION IN WEST'S HAWAI'I REPORTS AND PACIFIC REPORTER \*\*\***

**Electronically Filed
Supreme Court
SCAP-20-0000110
21-SEP-2021
08:00 AM
Dkt. 31 OP**

IN THE SUPREME COURT OF THE STATE OF HAWAI'I

---o0o---

IN RE INVESTIGATION OF: KAHEA
(Department of the Attorney General, State of Hawai'i,
AG Subpoena No. 2019-158)

SCAP-20-0000110

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CAAP-20-0000110; S.P. NO. 1CSP-19-0000062)

SEPTEMBER 21, 2021

RECKTENWALD, C.J., NAKAYAMA, McKENNA, WILSON, AND EDDINS, JJ.

OPINION OF THE COURT BY EDDINS, J.

In July 2019, construction of an astronomical observatory (the Thirty Meter Telescope or TMT) near the Mauna Kea summit loomed. That month, law enforcement officers arrested over thirty protesters on Mauna Kea's slopes. Hoping to thwart the Thirty Meter Telescope's construction, the protesters had blocked the road leading to the TMT's planned site. Later, the State charged these protesters with obstructing a highway or public passage.

The arrests and charges followed a lengthy legal and political battle over Mauna Kea's future. KAHEA: The Hawaiian Environmental Alliance, is an outspoken anti-TMT partisan in that scrap. One way KAHEA opposed development on Mauna Kea was through its Aloha ʻĀina Support Fund. According to KAHEA's website, the Aloha ʻĀina Support Fund "prioritizes frontline logistical support for non-violent direct actions taken to protect Mauna Kea from further industrial development."

In November 2019, the State of Hawaiʻi Attorney General (the State AG or Attorney General) issued a subpoena duces tecum to First Hawaiian Bank (the Subpoena). The Subpoena commanded the bank to produce eighteen categories of records from KAHEA's accounts. KAHEA moved to quash the Subpoena. It claimed the Subpoena was retaliatory harassment. KAHEA said the State AG wanted to punish it for its anti-TMT advocacy.

The State AG maintained that the Subpoena was not retaliatory. The Attorney General said an ongoing investigation justified the Subpoena. The State wondered whether the Aloha ʻĀina Support Fund's (the Fund) financial support for "direct action" on Mauna Kea meant KAHEA had an "illegal purpose" that made it ineligible for an income taxation exemption under Internal Revenue Code section 501(c)(3).

The circuit court did not quash the entire Subpoena. But it disallowed fifty percent of the Subpoena's requests. And

though the Subpoena sought documents connected to "all financial records of KAHEA," the court trimmed the Subpoena's scope to "any account that holds assets belonging to the Aloha 'Āina Support Fund."

On appeal, KAHEA argues that the whole Subpoena should have been quashed because it: (1) exceeds the Attorney General's statutory authority under Hawai'i Revised Statutes (HRS) § 28-2.5 (2009); (2) is unreasonable, oppressive, and subject to quashing under HRS § 28-2.5(e); and (3) violates KAHEA's First Amendment rights.

Each of these arguments in some way flows from KAHEA's underlying contention that the Subpoena is retaliatory.

The State AG portrays the Subpoena as a legitimate and reasonable exercise of its investigatory powers. The Attorney General rejects KAHEA's retaliation claim as unsupported by the record. It asserts the Subpoena's constitutionality.

We agree with the State AG that its investigatory powers validated the Subpoena. But we conclude that two Subpoena requests seeking information about monies *going into* rather than *coming out of* KAHEA's bank accounts are unreasonable.

We also conclude that KAHEA's argument about the Subpoena curtailing its First Amendment freedom of speech rights fails: the Subpoena neither punishes nor forbids KAHEA's speech. And – though KAHEA's contention that the State AG had some retaliatory

3

animus towards KAHEA is not entirely unpersuasive — we further conclude that KAHEA's First Amendment retaliation claim also fails; the record lacks a showing that retaliatory motive was a substantial or motivating factor in the Subpoena's issuance.

## I.    BACKGROUND

### A.    KAHEA and its opposition to development on Mauna Kea

KAHEA is a community-based charitable organization in Hawai'i; it describes itself as promoting "cultural understanding and environmental justice."

KAHEA opposes development on Mauna Kea.  One way it does this is by operating the Aloha 'Āina Support Fund.  KAHEA touts the Fund as "prioritiz[ing] frontline logistical support for non-violent direct actions taken to protect Mauna Kea from further industrial development."  Its website announces that the "logistical support" the Fund provides includes the "provision of bail where appropriate."

KAHEA has also pursued legal challenges to the TMT's construction.  In two appeals before this court, KAHEA was adverse to the State of Hawai'i Board of Land and Natural Resources (the BLNR).  Both appeals stemmed from contested cases before the BLNR concerning a conservation district use permit issued for the TMT's construction.  In these appeals, attorneys from the Attorney General's office represented the BLNR.  See Mauna Kea Anaina Hou v. Bd. of Land & Nat. Res., 136 Hawai'i 376,

363 P.3d 224 (2015); <u>Matter of Conservation Dist. Use Application HA-3568</u>, 143 Hawaiʻi 379, 431 P.3d 752 (2018).

**B.    The Subpoena**

On November 14, 2019, the Attorney General served First Hawaiian Bank with the Subpoena.  The Subpoena covered bank records generated between January 1, 2017, and November 12, 2019.  It sought eighteen categories of records relating to KAHEA:

1.    Monthly Statements;
2.    Signature/Account cards;
3.    All Debit card assignments and numbers from the dates you need;
4.    Power of attorneys;
5.    Deposit tickets with offset items;
6.    Cancelled checks;
7.    Debit memos;
8.    Credit memos;
9.    Applications of loans;
10.   All notice of adverse action against account holders;
11.   Other subpoenas requesting records from the account;
12.   Request for money/wire transfers;
13.   Application for cashier's checks with the cancelled cashier's checks;
14.   Tax returns submitted with application for loans;
15.   All delinquency notices of account sent to account holders.
16.   Photo of debit card issued;
17.   Directory that translate [sic] the numerical bank code information to an address of the branch;
18.   Bank surveillance photos to include those from ATM machines.

The Subpoena declared that it was issued "in accordance with [HRS §] 28-2.5."  HRS § 28-2.5(a) provides that "[t]he attorney general shall investigate alleged violations of the law when directed to do so by the governor, or when the attorney general determines that an investigation would be in the public interest."  Under HRS § 28-2.5(b), "[t]he attorney general, when

conducting a civil, administrative, or criminal investigation . . . may . . . require the production of any books, papers, documents, or other objects designated therein or any other record however maintained, including those electronically stored, which are relevant or material to the investigation."

## C.   Circuit court proceedings

KAHEA moved to quash the Subpoena in a special proceeding before the Circuit Court of the First Circuit.[1]  It argued that the State AG's investigation was not "in the public interest" because it was retaliatory harassment for KAHEA's opposition to development on Mauna Kea.  KAHEA also argued that the Subpoena was unreasonable, overly broad and oppressive.

The State AG opposed KAHEA's motion to quash.  It maintained that the Subpoena advanced two ongoing investigations into KAHEA's "alleged violations of the law": (1) an investigation into KAHEA's "continued failure to file required financial reports" and related allegedly improper solicitation of donations;[2] and (2) an investigation into whether the Fund's support of putatively illegal anti-TMT actions gave KAHEA an

---

[1]     The Honorable James H. Ashford presided.

[2]     Under HRS § 467B-9(h) (2013), charitable organizations that have not complied with the financial reporting requirements of Chapter 467B may not "solicit contributions from persons in the State or otherwise operate in the State as a charitable organization . . . ."

illegal purpose such that it could not properly claim Internal Revenue Code § 501(c)(3) tax-exempt status.[3]  The State AG highlighted its affirmative duty to oversee Hawai'i's charitable organizations.  See HRS § 28-5.2(a) ("The attorney general shall represent the public interest in the protection of charitable assets . . . .").  It argued that both of its investigations into KAHEA were good faith efforts to fulfill that duty.

The circuit court rejected the State AG's arguments concerning the need to investigate KAHEA's noncompliance with state financial reporting requirements.[4]  But the court accepted the State AG's argument that it had a responsibility to investigate whether KAHEA had an illegal purpose and was therefore improperly claiming tax-exempt status under § 501(c)(3).  The court ruled that the Attorney General could subpoena KAHEA's financial records on those grounds.

But the circuit court had concerns about several of the Subpoena's document requests.  After providing the parties an opportunity to resolve their differences over specific document requests (they did not), the court exercised its discretion.  It disallowed nine of the eighteen requests, specifically Subpoena

---

[3]    Section 501(c)(3) of the Internal Revenue Code allows a federal tax exemption for nonprofit organizations.

[4]    The court stated: "I'm not going to be approving a subpoena based on the [financial reports] issue.  I thought I made that clear.  Just so you know . . . that ship's not going to sail."

request numbers two, three, four, ten, eleven, fifteen, sixteen, seventeen, and eighteen.[5]  Further, though the Subpoena sought documents relating to "all financial records of KAHEA," the court narrowed the Subpoena's reach to "any account that holds assets belonging to the Aloha 'Āina Support Fund."

**D.    Proceedings on appeal**

On appeal,[6] KAHEA attacks the Subpoena on three fronts.

First, KAHEA argues that despite HRS § 28-2.5's broad language, the State AG lacked statutory authority to issue the Subpoena because the State AG's putative "investigation": (1) does not involve KAHEA's alleged violations of law; (2) was not directed by the governor; and (3) is not in the public interest. The State AG rejects KAHEA's claim.  The Subpoena, it asserts, was justified by an ongoing investigation into whether KAHEA financially supported illegal activities while claiming tax benefits reserved for charitable organizations.

In explaining the need for its investigation, the State AG discussed a 1975 IRS revenue ruling concerning an antiwar

---

[5]    These requests sought: two (Signature/Account cards); three (All Debit card assignments and numbers from the dates you need); four (Power of attorneys); ten (All notice of adverse action against account holders); eleven (Other subpoenas requesting records from the account); fifteen (All delinquency notice of account sent to account holders); sixteen (Photo of debit card issued); seventeen (Directory that translate [sic] the numerical bank code information to an address of the branch); and eighteen (Bank surveillance photos to include those from ATM machines).

[6]    KAHEA appealed to the Intermediate Court of Appeals.  It then applied for, and received, direct transfer of the case to this court.

protest organization that planned and sponsored acts of civil disobedience. In its ruling, the IRS determined that the organization had an "illegal purpose."[7] As a result, the organization did not "qualify for exemption from Federal income tax under section 501(c)(3) of the Code" because it was "not operated exclusively for charitable purposes . . . ." See Rev. Rul. 75-384, 1975-2 C.B. 204.

Second, KAHEA argues that the Subpoena should be quashed because it is unreasonable or oppressive under HRS § 28-2.5(e), under which the court, "on motion promptly made, may quash or modify the subpoena if compliance would be unreasonable or oppressive or violate any privilege the witness may be entitled to exercise in a court proceeding."

KAHEA generally brands the Subpoena as an overbroad "fishing expedition." KAHEA does not pointedly explain why any particular Subpoena request is unreasonable or oppressive[8] given the nature of the Attorney General's investigation. In its answering brief, the State AG says KAHEA "simply cannot show" that the Subpoena was a "fishing expedition." The State AG also

---

[7]    In reaching this determination, the IRS considered that the organization sponsored antiwar demonstrations where participants violated local ordinances and "breache[d] public order" by "deliberately block[ing] vehicular or pedestrian traffic, disrupt[ing] the work of government, and prevent[ing] the movement of supplies." Rev. Rul. 75-384, 1975-2 C.B. 204.

[8]    KAHEA's arguments about the Subpoena's oppressiveness are largely coextensive with its claims that the Subpoena is overbroad and unconstitutional.

argues that because the circuit court significantly narrowed the Subpoena's scope during litigation, KAHEA has no basis for claiming that the circuit court's decision not to quash the entire Subpoena was arbitrary.

Third, KAHEA argues that the Subpoena is unconstitutional. KAHEA advances two distinct theories regarding the Subpoena's unconstitutionality. First, KAHEA describes the Subpoena as a "significant encroachment upon the constitutional rights of KAHEA and its members." It suggests the Subpoena is only valid if it survives strict scrutiny, the standard of review used in evaluating content-based speech restrictions. Second, KAHEA asserts that the Subpoena - even if otherwise lawful - is still unconstitutional because it was motivated by the State AG's retaliatory animus towards KAHEA.[9] KAHEA identifies three circumstances it says show that retaliatory intent motivated the Attorney General's issuance of the Subpoena.

---

[9] Various other constitutional arguments are either cursorily gestured towards in KAHEA's briefing or advanced exclusively by amici curiae. KAHEA has not articulated any cognizable legal arguments about its members' First Amendment associational rights or about it or its members' rights under article I, sections 4, 6, or 7 of our state constitution. We therefore limit our constitutional analysis to KAHEA's First Amendment retaliation claim. See Kahoʻohanohano v. Dep't of Hum. Servs., State of Haw., 117 Hawaiʻi 262, 297 n.37, 178 P.3d 538, 573 n.37 (2008) (cleaned up) (stating that this court will "disregard a particular contention if the appellant makes no discernible argument in support of that position"). See also Hawaiʻi Rules of Appellate Procedure (HRAP) Rule 28(b)(7) (2007) ("Points not argued may be deemed waived."); Zango, Inc. v. Kaspersky Lab, Inc., 568 F.3d 1169, 1177 n.8 (9th Cir. 2009) ("An amicus curiae generally cannot raise new arguments on appeal and arguments not raised by a party in an opening brief are waived." (citation omitted)).

First, KAHEA points to its adversarial relationship with the State. It says it has engaged in sustained advocacy in opposition to "the State's facilitation of a foreign corporation's development of the Thirty Meter Telescope on Public Lands on Mauna Kea." It also states it was adverse to a party represented by the Attorney General in two appeals before this court.

Second, KAHEA mentions that the State AG issued investigative subpoenas to Hawaiian Airlines and the Office of Hawaiian Affairs. KAHEA says these subpoenas sought documents about support for, or supporters of, the protests on Mauna Kea. It suggests that the Hawaiian Airlines and OHA subpoenas show the Subpoena comprises part of a larger harassment campaign targeting those who oppose development on Mauna Kea.

Third, KAHEA implies that the Subpoena's overbreadth signals that the State AG retaliated against KAHEA for its advocacy. The circuit court disallowed half of the Subpoena's initial requests. It then narrowed the Subpoena's sweep to accounts related to the Aloha 'Āina Fund. The court also rejected the Attorney General's claim that it needed to investigate KAHEA's failure to satisfy state financial reporting requirements. KAHEA's briefing insinuates that the Subpoena's wide-ranging demands show it was not issued to further a legitimate investigation.

KAHEA also claims that the Subpoena will "chill" it and its members' protected speech.

The State AG contests each element of KAHEA's First Amendment retaliation claim.  Responding to KAHEA's position that the group's advocacy is constitutionally protected, the Attorney General proclaims that "[a] blockade of a public road, no matter for what purpose, is *not* a constitutionally protected activity."  The State AG also rejects the premise that a single subpoena could chill expressive rights.  Finally, the State AG contends that the record contains "no evidence" whatsoever that the State AG has retaliated against KAHEA for its anti-TMT advocacy.

## II.  DISCUSSION

### A.  The Attorney General had authority to issue the Subpoena under HRS § 28-2.5

HRS § 28-2.5(a) provides that the Attorney General "shall investigate alleged violations of the law . . . when the attorney general determines that an investigation would be in the public interest."  Under subsection (b) of the same statute, the Attorney General may, when conducting an administrative investigation, subpoena witnesses and require the production of books, papers, documents or other records which are "relevant or material to the investigation."[10]

---

[10]    For the reasons discussed in section II(B), the documents sought by Subpoena requests numbers five and eight are likely neither relevant nor

The Attorney General's subpoena power under this statute is broad.  But it is not unbounded.  It is hemmed by the constitution and the safeguards of the statute itself.[11]  HRS § 28-2.5(a), however, does not check the Attorney General's discretion to determine when an investigation is "in the public interest."  Nor does it require that an "allegation" of unlawful conduct be sufficiently serious or credible before it may be investigated.  A subpoena may always be challenged on state or federal constitutional grounds.  And parties who feel compliance with a subpoena would be unreasonable or oppressive may move to quash or modify it under HRS § 28-2.5(e).  But they cannot second-guess the Attorney General's discretion under HRS § 28-2.5(a).

KAHEA's claims that the State AG's investigation is "not in the public interest" are unconvincing.  The Attorney General has a duty to "represent the public interest in the protection of charitable assets . . . ."  See HRS § 28-5.2(a).  The

---

material to the State AG's investigation.  Because KAHEA does not make a discrete statutory argument under HRS § 28-2.5(b), and because we hold that compliance with Subpoena request numbers five and eight would be unreasonable under HRS § 28-2.5(e), we decline to consider whether the State AG exceeded its statutory authority under HRS § 28-2.5(b) by seeking documents which were neither relevant nor material to its investigation.

[11]     In addition to HRS § 28-2.5(e), which authorizes the court to quash or modify a subpoena if compliance with it would be "unreasonable or oppressive or violate any privilege the witness may be entitled to exercise in a court proceeding," the statute contains procedural safeguards.  For example, subpoenas issued under HRS § 28-2.5 must "contain a short, plain statement of the recipient's rights and the procedure for enforcing and contesting the subpoena."  HRS § 28-2.5(c)(4).

legislature has expressly authorized the State AG to use HRS § 28-2.5's subpoena power to advance this goal.  See HRS § 28-5.2(b).  The determination of whether an investigation is "in the public interest" rests squarely with the Attorney General.  Not with KAHEA.  And not with this court.[12]

We conclude that the Attorney General did not exceed its authority under HRS § 28-2.5 in issuing the Subpoena.

**B.    The Subpoena's requests seeking information concerning monies going *into* the Fund are unreasonable**

The Attorney General's discretion under HRS § 28-2.5(a) is counterbalanced by courts' powers under HRS § 28-2.5(e).  This subsection gives trial courts leeway to hew unreasonable or oppressive subpoenas - with a battle ax, scalpel, or butter knife - as justice so requires.  The circuit court in this case was an effective first line of defense against governmental overreach: it disallowed nine of the Subpoena's eighteen requests and limited its scope to accounts related to the Aloha 'Āina Fund.

---

[12]    The decision to launch an investigation, or issue a subpoena buoying an investigation, is, like a prosecutor's decision to prosecute or not prosecute a charge, ill-suited to judicial review.  See Wayte v. United States, 470 U.S. 598, 607 (1985) (observing that "[s]uch factors as the strength of the case, the prosecution's general deterrence value, the Government's enforcement priorities, and the case's relationship to the Government's overall enforcement plan are not readily susceptible to the kind of analysis the courts are competent to undertake").

KAHEA argues the circuit court should have gone further and fully quashed the Subpoena because compliance with it would be unreasonable and oppressive.

There is nothing intrinsically unreasonable or oppressive about the Subpoena. Charitable organizations in our state are regulated, see HRS Chapter 467B, and the Attorney General has a duty to "represent the public interest in the protection of charitable assets." See HRS § 28-5.2(a). The contours of that duty are partly contingent on federal law: Hawai'i's definition of a "charitable organization" expressly relies on the 501(c)(3)-eligibility determination. See HRS § 467B-1(1) (defining "charitable organization" as "[a]ny person determined by the Internal Revenue Service to be a tax-exempt organization pursuant to section 501(c)(3) of the [IRC]").

KAHEA's eligibility for 501(c)(3) status falls within the State AG's purview. So the AG's call to investigate the potential effects of KAHEA's support for anti-TMT "direct action" on that eligibility is entitled to deference.

Still, Subpoena request numbers five and eight are unreasonable. These requests are for deposit tickets and credit memos. They concern monies going *into*, rather than coming *out of* the Fund. But the Attorney General's investigation concerns money going *out* of the Aloha 'Āina fund, not *into* it. These requests are therefore unreasonable.

15

At a hearing on KAHEA's motion to quash, the deputy attorney general said that reviewing deposit tickets associated with KAHEA's bank accounts would allow the State AG to distinguish charitable donations to KAHEA from other income going into KAHEA's accounts. This differentiation mattered, the deputy attorney general represented, because the government's investigation was focused on the misuse of *charitable* donations. This explanation doesn't make sense.

The State AG's investigation is not about the "misuse" of charitable funds *per se* but rather about whether KAHEA is improperly claiming 501(c)(3) tax exempt status while advancing an illegal purpose.[13] Where KAHEA gets its money does not matter when the inquiry involves whether KAHEA has used the Fund to advance an illegal purpose. And knowing *who* gave how much to the Aloha 'Āina Fund will not help the State AG determine whether KAHEA has an "illegal purpose." Money is fungible: even if none of the Fund's assets came from charitable donations, the State AG could still claim that KAHEA's purpose was not exclusively charitable if KAHEA used any of its assets to advance "illegal" aims.

---

[13] Since the circuit court did not issue the Subpoena on the basis of the Attorney General's investigation into KAHEA's delinquency in filing its financial reports and concomitant alleged improper solicitation of donations, our analysis focuses on the Attorney General's investigation into whether KAHEA has an illegal purpose and is, by extension, improperly claiming 501(c)(3) status.

Because the source of KAHEA's funds is irrelevant to the State AG's investigation, the circuit court's denial of KAHEA's motion to quash regarding request numbers five and eight was plainly arbitrary and unsupported by the record.

But the record does not support KAHEA's contention that request numbers one, six, seven, nine, twelve, thirteen, and fourteen are unreasonable.  Each of these requests seeks records which are, or could be, relevant and material to the State AG's investigation.  Therefore, the circuit court's decision to allow these requests was not plainly arbitrary or unsupported by the record.  See Powers v. Shaw, 1 Haw. App. 374, 376, 619 P.2d 1098, 1101 (1980) ("On review, the action of a trial court in enforcing or quashing the subpoena will be disturbed only if plainly arbitrary and without support in the record.").

**C.   KAHEA's constitutional arguments**

**1.   The Subpoena does not unconstitutionally burden KAHEA's First Amendment rights**

KAHEA's position that the Subpoena unconstitutionally encroaches on its First Amendment free speech rights lacks merit.

KAHEA's First Amendment argument incorrectly treats the Subpoena – which was issued as part of an investigation launched in response to KAHEA's advocacy – as legally equivalent to a *law* proscribing or punishing KAHEA's advocacy.  KAHEA argues that

the Subpoena is unconstitutional because the government could not constitutionally ban KAHEA from, or punish it for, supporting non-violent direct actions on Mauna Kea.[14]  But the Subpoena is not a law censoring or forbidding KAHEA's advocacy.  And here, through the Subpoena, the State AG is not seeking to hold KAHEA criminally liable because it supports direct action on Mauna Kea.  This is why KAHEA's reliance on NAACP v. Button,

---

[14]  Much of KAHEA's First Amendment argumentation is best understood as a preview of constitutional arguments KAHEA could advance if the State were to try and punish KAHEA for bankrolling civil disobedience on Mauna Kea.  But KAHEA is wrong to suggest that the existence of potential constitutional defenses to any charges or claims that may arise from the State AG's investigation make the investigation unconstitutional (or illegitimate or unreasonable).

KAHEA's reasoning implicitly asks us to adopt something akin to a "likelihood of success on the merits" requirement whereby administrative subpoenas are only constitutional (or legitimate under HRS § 28-2.5(a) or "reasonable" under HRS § 28-2.5(e)) when they are issued during investigations that the court believes will give rise to charges or claims for which the defendant will not have a valid constitutional defense.  This approach is unsupported by the law and would represent a significant and inappropriate encroachment on the Attorney General's powers of inquisition.

18

371 U.S. 415 (1963), is misplaced.[15],[16]

In Button, the Supreme Court considered the

---

[15] KAHEA's reliance on NAACP v. Claiborne Hardware Co., 458 U.S. 886 (1982), is also misplaced. In Claiborne, the Court considered whether the NAACP could be held civilly liable for damages suffered by merchants as a result of a boycott that, though largely nonviolent, had included some acts of violence. The court held that the NAACP could not be held liable for damage caused by boycotters' acts of violence because there was "no evidence that the NAACP ratifieds [sic] or even had specific knowledge of—any of the acts of violence or threats of discipline associated with the boycott." Id. at 930-31. In a footnote, the Court observed that the NAACP "had posted bond and provided legal representation for arrested boycott violators." Id. at 931 n.78. But this conduct, the Court said, did not "support a determination that the national organization was aware of, and ratified, unauthorized violent conduct" because the NAACP "regularly provides such assistance to indigent black persons throughout the country." Id.

KAHEA argues that because the NAACP's posting of bail for arrested boycotters could not support a finding that the NAACP ratified violent boycotters' conduct, KAHEA's "posting of bond" and "providing of legal representation for those arrested [on Mauna Kea] could not be a basis for the circuit court to allow for the production of bank and financial records of KAHEA's Aloha ʻAina account held at the First Hawaiian Bank."

As a preliminary matter, Claiborne is inapplicable because the State AG doesn't seek to hold KAHEA liable for damages arising out of the arrests on Mauna Kea. The limits on exposure to civil liability for the acts of another discussed in Claiborne are irrelevant to the questions this case presents about the scope of the State AG's investigatory powers and the legality of their exercise.

Claiborne is also distinguishable from this case because the record here provides ample evidence that KAHEA knew about, financially supported, and ratified "direct action" on Mauna Kea. Whereas the NAACP "supplied no financial aid to the boycott," KAHEA established the Fund with the express purpose of financially supporting "direct action" on Mauna Kea. Moreover, the Supreme Court says that the NAACP's support for arrested boycotters was not evidence of its support for, or ratification of, boycotters' violent acts because the NAACP "regularly provides [bond and legal] assistance to indigent black persons throughout the country." The record here does not suggest KAHEA regularly provides bail support to indigent persons throughout the country or state. To the contrary, the record suggests that KAHEA provided bail support for arrested protestors as part of a targeted campaign supporting "direct action" on Mauna Kea.

[16] NAACP v. State of Ala. ex rel. Patterson, 357 U.S. 449 (1958), is also distinguishable. That case – like the Supreme Court's recently decided Americans for Prosperity Found. v. Bonta, ___ U.S. ___, 141 S. Ct. 2373 (2021) — concerned First Amendment association rights. Since KAHEA failed to adequately advance any First Amendment freedom of association claims on behalf of its members, see supra n.9, Patterson and Americans for Prosperity are inapplicable. We express no opinion about the viability of any First Amendment freedom of association claims KAHEA could have asserted on behalf of its members.

constitutionality of a Virginia law that made it a crime for the plaintiff, the NAACP, to hold meetings where it invited prospective litigants to sign documents authorizing NAACP lawyers to represent them.  The Supreme Court held that Virginia's law was an unconstitional imposition on the NAACP's First Amendment rights as absorbed by the Fourteenth Amendment.

Unlike the Virginia statute at issue in Button, the Subpoena is not a law.  It does not forbid or proscribe KAHEA from doing, saying, funding, or supporting anything.  KAHEA's arguments miss the critical point that a governmental investigation triggered in response to constitutionally-protected speech is not the same thing as a law criminalizing that speech.  Any burden on KAHEA's speech here is purely incidental.

We conclude that the Subpoena is not an inherently unconstitutional imposition on KAHEA's First Amendment freedom of speech rights.

### 2. The record does not support KAHEA's First Amendment retaliation claim

Even an otherwise lawful governmental action may be unconstitutional if it is initiated in retaliation for speech or conduct covered by the First Amendment.  See Hartman v. Moore, 547 U.S. 250, 256 (2006) ("[T]he law is settled that as a general matter the First Amendment prohibits government

officials from subjecting an individual to retaliatory actions . . . for speaking out.").

A plaintiff bringing a First Amendment retaliation claim must show that: "(1) [they were] engaged in a constitutionally protected activity, (2) the defendant's actions would chill a person of ordinary firmness from continuing to engage in the protected activity and (3) the protected activity was a substantial or motivating factor in the defendant's conduct." O'Brien v. Welty, 818 F.3d 920, 932 (9th Cir. 2016).[17]  If this showing is made, the burden shifts to the government to "show by a preponderance of the evidence" that it would have taken the same action "even in the absence of the protected conduct."  See Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977).

KAHEA's opposition to development on Mauna Kea falls squarely within the heartland of the First Amendment's protections.

We also agree with KAHEA that the prospect of an administrative subpoena seeking extensive banking records is an

---

[17]    O'Brien concerns a First Amendment retaliation action under 42 U.S.C. § 1983, not a motion to quash an administrative subpoena on constitutional grounds.  Both parties agree that O'Brien states the constitutional standard that controls the analysis of KAHEA's First Amendment claim.

21

adverse action that would chill a person of ordinary firmness from exercising First Amendment rights.[18]

But KAHEA's First Amendment retaliation claim nonetheless fails because KAHEA has not shown that retaliatory animus was a substantial or motivating factor in the Subpoena's issuance.

We recognize that, in some cases, the government's explanation for an action may be so at odds with controlling law that it is, itself, evidence of pretext and retaliatory animus. But that is not the case here. The State AG's investigation is premised on the notion that KAHEA's financial support for direct action opposing development on Mauna Kea may disqualify it from 501(c)(3) status. Nothing about this premise contradicts or runs counter to First Amendment principles.

The federal tax exemption for charitable organizations is effectively a taxpayer-funded subsidy for organizations that serve some public benefit. As the Supreme Court explained in

_____

[18] The State AG's argument that the Subpoena would not "chill a person of reasonable firmness" relies on the distinguishable Laird v. Tatum, 408 U.S. 1 (1972), case. There, the Supreme Court considered whether the Army's surveillance of public meetings and publications that were thought to have some connection to civil disorder infringed on the constitutional rights of those surveilled. The Supreme Court concluded that no "chilling effect" arose from "knowledge that a governmental agency was engaged in certain activities or from the individual's concomitant fear that, armed with the fruits of those activities, the agency might in the future take some other and additionl [sic] action detrimental to that individual." Id. at 11. Significantly, the Court in Laird distinguished the exercise of government power at issue in that case from those that were "compulsory" in nature. Id. Administrative subpoenas like the one the State AG issued First Hawaiian Bank are "compulsory" in nature because they leverage state power to compel the production of documents or testimony.

Bob Jones Univ. v. United States, 461 U.S. 574 (1983):

> When the Government grants exemptions or allows deductions all taxpayers are affected; the very fact of the exemption or deduction for the donor means that other taxpayers can be said to be indirect and vicarious "donors."  Charitable exemptions are justified on the basis that the exempt entity confers a public benefit . . . .

Id. at 591.  One corollary of the "public benefit principle" is that to qualify for the exemption, an organization must have a charitable purpose "'consistent with local laws and public policy'."  Id. (quoting Perin v. Carey, 65 U.S. 465, 501 (1861)).  See also id. at 592 ("[T]o warrant exemption under § 501(c)(3), an institution . . . must demonstrably serve and be in harmony with the public interest.").

The State AG's characterization of its investigation as probing whether KAHEA has "an illegal purpose" is thus misleading because its use of the word "illegal" suggests as a necessary premise some unlawfulness on KAHEA's part.  To the contrary, KAHEA's advocacy could be totally legal and *still* jeopardize its eligibility for 501(c)(3) status.

The State AG has represented that it is not investigating whether KAHEA has done anything illegal; it is investigating whether KAHEA serves a public benefit such that all U.S. taxpayers – a group that may include supporters of development on Mauna Kea – ought to be KAHEA's "vicarious donors."  KAHEA could have an "illegal purpose" without having *done* anything illegal.  As such – and given IRS Revenue Ruling 75-384 and the

record here – the notion that KAHEA's support for "direct action" on Mauna Kea might impact its eligibility for § 501(c)(3) status is not so unsound that it betrays retaliatory animus.[19]

KAHEA's arguments concerning its adversarial relationship with the State AG are slightly more persuasive: KAHEA's anti-TMT advocacy and opposition to the State AG's client in appeals before this court show that the State AG may have had a *motive* for targeting KAHEA. But that is very different from showing that retaliatory animus – rather than legitimate nonretaliatory reasons – motivated the Subpoena's issuance.

The strongest "evidence" linking the Subpoena to the retaliatory intent KAHEA alleges is the Subpoena's overbreadth. Many of the eighteen categories of requested records the Subpoena initially sought have no apparent connection to the Attorney General's investigation. The "delta" between what would be reasonable given the investigation's stated aims and what was actually sought by the Subpoena may hint that

---

[19] Though Revenue Ruling 75-384 is more than forty years old, the IRS continues to rely on it in private letter rulings. For example, in 2019, the IRS cited Revenue Ruling 75-384 in a private letter ruling concerning an organization formed to aid financially disadvantaged patients affected by the costs of THC and CBD (cannabidiol) treatment. The organization assisted these patients "by providing financial support to cover costs of living and other expenses . . . . " I.R.S. P.L.R. 201917008 (Apr. 26, 2019). The IRS concluded that because cannabis was illegal under federal law, and because the organization was formed to provide financial assistance to cannabis users, the organization had an "illegal purpose" and could not be recognized as exempt under Section 501(c)(3) of the Internal Revenue Code. Id.

retaliatory animus animated the Subpoena's issuance. But overbroad subpoenas are unremarkable. And while the unreasonableness of the Subpoena may "tend to" show that retaliation motivated the Subpoena, it is not dispositive on this point.

While KAHEA's briefing provides some fodder for speculation about the Attorney General's motives in issuing the Subpoena, KAHEA has not demonstrated that retaliation was a substantial or motivating factor behind the Subpoena. The Subpoena is justified on nonretaliatory grounds. See supra section II(A). And the State AG's stated rationale for investigating KAHEA is consistent with the Attorney General's obligation to "represent the public interest in the protection of charitable assets . . . ." See HRS § 28-5.2(a). Given these facts and the record before us, KAHEA has not shown that retaliatory animus was a substantial or motivating factor in the Subpoena's issuance. KAHEA's First Amendment retaliation claim thus fails.[20]

### 3. KAHEA has not preserved any arguments under article I, section 4 of the Hawaiʻi Constitution

Article I, section 4 of the Hawaiʻi Constitution reads: "No law shall be enacted respecting an establishment of religion, or

---

[20] Like the Supreme Court in Laird, we reach this conclusion without intimating any "view with respect to the propriety or desirability, from a policy standpoint, of the challenged activities of the [State AG]." See 408 U.S. at 15.

prohibiting the free exercise thereof, or abridging the freedom of speech or of the press or the right of the people peaceably to assemble and to petition the government for a redress of grievances."

This court generously interprets the civil rights bestowed by the Hawai'i Constitution. We have held that article I, section 4 provides free speech rights "at least as expansive as those provided by the United States Constitution." State v. Russo, 141 Hawai'i 181, 190, 407 P.3d 137, 146 (2017) (emphasis added). See also id. (recognizing that the Hawai'i Constitution affords "greater free speech protection than its federal counterpart") (quoting Crosby v. State Dep't of Budget & Fin., 76 Hawai'i 332, 339 n.9, 876 P.2d 1300, 1307 n.9 (1994)); Oahu Publ'ns Inc. v. Ahn, 133 Hawai'i 482, 494, 331 P.3d 460, 472 (2014).

Though KAHEA's opening brief recognizes that article I, section 4 provides free speech rights "at least as expansive as those provided by the United States Constitution," KAHEA has not advanced *any* precise arguments concerning it or its donors' article I, section 4 rights. The State AG, in turn, did not address article I, section 4 at all in its answering brief. Likewise, though KAHEA name checked article I, section 4 at the February 7, 2020 hearing before the circuit court, it did not make any discrete legal arguments concerning article I, section

26

4 before the circuit court.

Hence, KAHEA has not made any discernible arguments under article I, section 4. Any arguments it could have made under this provision are waived. See Kahoʻohanohano, 117 Hawaiʻi at 297 n.37, 178 P.3d at 573 n.37.

## III. CONCLUSION

The circuit court's February 26, 2020 order granting in part and denying in part KAHEA's motion to quash the Subpoena is reversed with respect to Subpoena request numbers five and eight. It is affirmed in all other respects. The case is remanded to the circuit court for proceedings consistent with this opinion.

Richard Naiwieha Wurdeman
for petitioner

David D. Day,
(Lawrence L. Tong on the briefs)
for respondent

Lance D. Collins,
(Bianca Isaki on the briefs)
for Amicus Curiae
Anonymous Donors to KAHEA: The
Hawaiian-Environmental Alliance

Jongwook Kim,
for Amicus Curiae
ACLU of Hawaiʻi Foundation

/s/ Mark E. Recktenwald

/s/ Paula A. Nakayama

/s/ Sabrina S. McKenna

/s/ Michael D. Wilson

/s/ Todd W. Eddins

