McDonald, J.
|sThe Louisiana Department of Insurance, through the Commissioner of Insurance, appeals a judgment of the trial court, which maintained various exceptions and dismissed with prejudice the Department of Insurance’s petition. For the following reasons, we reverse and remand.
FACTS AND PROCEDURAL HISTORY
In October 2007, the Louisiana Legislative Auditor (Auditor)[2] commenced an audit of Louisiana Citizens Property Insurance Corporation, the Property Insurance Association of Louisiana, and the Louisiana Automobile Insurance Plan, insurance companies managed by the Louisiana Department of Insurance (hereinafter referred to as the Department). The audit was subsequently expanded, and the Auditor commenced an audit of the Department for the fiscal year 2006-2007. On October 18, 2007, the Auditor requested that the Department produce all emails from October 1, 2003, through the current date. The Department agreed to produce all documents they deemed necessary for financial and compliance audit purposes, but claimed that it was prohibited from providing access to documents protected by privileges, particularly the attorney-client and deliberative process privileges.
Failing to receive all the information it had requested, the Auditor and the Louisiana Audit Advisory Council issued a subpoena to the Commissioner of Insurance on November 7, 2007, requesting:
1. All Department of Insurance email beginning October 1, 2003 to date; and
2. A copy of all Department of Insurance backup tapes beginning October 1, 2003 to date.
| thereafter, on November 15, 2007, the Department filed suit against the Auditor, seeking a determination that the privileges it had asserted were superior to any of the Auditor’s statutory rights of access to data.
This suit was dismissed after the parties entered into a Confidentiality Agreement in March 2008, which was intended to provide the protections that concerned the Department and would grant to the Auditor the information needed to complete the audit. The chairman of the Legislative Audit Advisory Council submitted a motion to the Council to rescind the subpoena issued to the Department, advising that it was “the opinion of the Legislative Auditor that the Confidentiality Agreement has resolved the problems regarding the Auditor’s access to records maintained by the LDOI for the completion of its audits.” The motion also noted that the Auditor believed that the issues that were the basis for the Department’s lawsuit had been resolved by the agreement.
However, in spite of the agreement, on June 20, 2008, the Auditor delivered a draft of his audit to the Department in which he claimed he was unable to complete the audit unless provided with all the information requested in the subpoena. The Auditor terminated the Confidentiality Agreement in September, because he had not received the requested records, which *857 the Department believed it was not legally required to submit.
On September 23, 2008, the Auditor sent a letter to the Attorney General, advising that the Auditor had attempted to review records of the Department necessary to perform both financial and compliance audits, and “To date, we have not received all of the records requested.” Pursuant to LSA-R.S. 24:513 H,[3] the Auditor requested assistance in securing these | ¿records. The letter asked that “you take whatever action you deem necessary to enforce state law,” referencing several statutes, namely LSA-R.S. 24:513 J, LSA-R.S. 24:518 A(1)(c), LSA-R.S. 24:518 A(2), LSA-R.S. 14:134, LSA-R.S. 44:37. In concluding, the letter stated, “Please advise us whether or not you anticipate any action on this matter.[4] If not, I must bring the issue before the Legislative Audit Advisory Council at its next meeting.”[5]
On November 12, 2008, the Auditor issued his audit, in which he asserted that he was unable to issue an opinion, “because the legislative auditor was not able to obtain complete, unfettered access to audit evidence and because [he was] unable to apply other auditing procedures to ensure completeness of the DOI records affecting the audit.” The Auditor further stated that the Department “is in noneom-pliance with state audit law” for failing to produce all the Section 513 Data.
The Department filed a petition for preliminary injunction, permanent injunction, and declaratory judgment, which, after adjudication by the trial court, is the subject of the appeal before us. The suit asserted numerous claims, most notably for purposes of this appeal, a request for a declaratory judgment affirming that the Auditor’s ability to have access to and be permitted to examine and copy Section 513 Data is subject to the protections, safeguards, privileges, and guaranties accorded by the attorney-client privilege and the deliberative process privilege. The Auditor and legislature, through the Legislative Audit Advisory Council, filed several exceptions, including a declinatory exception of lack of subject matter | ¿jurisdiction and/or mootness, peremptory exceptions of no cause of action and no right of action, and dilatory exception of vagueness.[6]
The trial court granted the exceptions raising the objections of lack of subject matter jurisdiction and/or mootness, no right of action, and no cause of action, and all claims of the Department were dismissed. The exception raising the objection of vagueness was found to be moot. A judgment to this effect was signed by the trial judge on August 7, 2009. The *858 Department has appealed the portion of the judgment granting the peremptory exception raising the objection of no cause of action, and cites two assignments of error:
1. The trial court erred in its ruling that an entity subject to audit by the Louisiana Legislative Auditor has no cause of action to assert that the type of data enumerated in La-R.S. 24:513(A)(l)(a) does not include documents protected by the attorney-client privilege.
2. The trial court erred in its ruling that an entity subject to audit by the Louisiana Legislative Auditor has no cause of action to assert that the type of data enumerated in La-R.S. 24:513(A)(1)(a) does not include documents protected by the deliberative process privilege.
DISCUSSION
Initially, we address the arguments of the Auditor and the Legislative Audit Advisory Council that the issues presented in the Department’s assignments of error are moot, because the final audit has been issued and the Auditor is no longer seeking the data that the Department contends is protected by privilege. As noted by the Department, the correctness of the disclaimer in the final audit, Le., that the Auditor could not render an opinion on the financial statements of the Department, because he did not have complete access to all documents requested, remains at issue herein. If, in fact, a determination were made that the Auditor was not entitled to access privileged data in conducting financial and compliance audits,_[^then the underlying basis for his refusal to render an opinion in the final audit could be erroneous. Moreover, in determining whether an issue is moot, a court should consider whether there is any reasonable expectation that the complained-of conduct will recur. Louisiana State Board of Nursing v. Gautreaux, 2009-1758 (La.App. 1st Cir.6/11/10), 39 So.3d 806, 812; writ denied, 2010-1957 (La. 11/5/10), 50 So.3d 806. Clearly, this is an issue that will continue to arise between the Auditor and the agencies of the state, given the scope of the Auditor’s duties and obligations.
The Auditor has a daunting function to perform, because the legislature relies on the Auditor’s office in large part in ensuring the financial solvency of the State.[7] It is necessary and essential that each audi-tee cooperate with the Auditor in order for these duties to be lawfully completed. Several provisions in the Louisiana Revised Statutes Title 24, Chapter 8, entitled, “Legislative Auditor; Legislative Audit Advisory Council,” provide for the duties of auditees and the penalties for failure to perform them. Louisiana Revised Statutes 24:513 H was noted previously. Louisiana Revised Statutes 24:513 K provides: “Whoever violates the provisions of this Section shall be fined not more than one thousand dollars and shall be deemed guilty of malfeasance and gross misconduct in office, and shall be subject to removal.” Malfeasance and removal from office are very stringent penalties. Clearly, this indicates that the legislature intended for auditees to cooperate "with the Auditor.
In addition to the provisions in Title 24 addressing duties of auditees, in 2008 the legislature amended portions of Title 39, dedicated to public finance, and enacted LSA-R.S. 39:72.1 to provide, in part:
*859 ls(A) Notwithstanding any contrary provision of law, no funds appropriated in the general appropriations act, the capital outlay act, or other appropriation act, shall be released or provided to any recipient of an appropriation if, when, and for as long as, the recipient fails or refuses to comply with the provisions of R.S. 24:513.
Because of the strict penalties for failure “to comply with the provisions of R.S. 24:513,” or otherwise cooperate with the legislative auditor, the Department seeks judicial interpretation of this statute. The Department has indicated that it has concerns regarding the constitutionality of the statute. We recognized in Kyle v. Louisiana Public Service Commission, 2003-0584 (La.App. 1st Cir.4/2/04), 878 So.2d 650, 657, that separation of powers issues are implicated in judicial interpretation of the statutes in Title 24 dealing with the Auditor. We decline to address any constitutional issues here. We note that it is preferable to render judgments, when possible, by interpretation of a statute without reaching issues of constitutionality, because statutes are presumed to be constitutional. See Southern Silica of La. v. La. Ins. Guaranty Assoc., 2007-1680 (La.4/8/08), 979 So.2d 460, 466-67. The Department may seek judicial interpretation of LSA-R.S. 39:72.1 through another suit for injunctive relief, in the event an action is taken that affects its funding.
An examination of Title 24 is sufficient to resolve the issue in this case. Originally a subpoena was issued for access to the documents that the Auditor claimed were necessary. Pursuant to LSA-R.S. 24:513 M(l), the Auditor and the chairman of the Legislative Audit Advisory Council may jointly issue a subpoena for the production of documents it deems necessary to perform its duties. This procedure was initially followed when a subpoena was issued on November 7, 2007. If the subpoenaed information is not forthcoming, then the statute provides that a district court, upon joint application by the Auditor and the chairman of the Legislative Audit Advisory Council, should address |9the matter. LSA-R.S. 24:513 M(2). In this case, however, as noted, the Auditor and the Department reached an agreement regarding the production of documents, and the subpoena was recalled. When the Auditor later did not receive data that it thought it needed to complete its audit, instead of following the procedure statutorily established to address this situation, the Auditor took the action outlined above.
When the statute is followed, an auditee will be required to have the issue decided by the district court. Courts routinely decide matters over which parties disagree. It is problematic for one of the parties, unilaterally, to decide the issue, especially considering the enormity of the consequences of a finding of failure to comply with the provisions of LSA-R.S. 24:513. The nature of the procedure and the importance of the Auditor receiving the data necessary to complete an audit timely must influence the court to give the matter an expeditious hearing.
The Department maintains that privileged documents are not data subject to LSA-R.S. 24:513. The Auditor’s interpretation of LSA-R.S. 24:513 allows it “complete and unfettered access to audit evidence,” including privileged documents. We agree that the Auditor must have “unfettered access to audit evidence.” What’s at issue here, however, is what constitutes “audit evidence.” As stated in the Government Accounting Standards, “The principles of transparency and accountability for the use of public resources are key to our nation’s governing processes. Government officials and recipients of federal moneys are responsible for carrying out *860 public functions efficiently, economically, effectively, ethically, and equitably, while achieving desired program objectives.” Government Accounting Standards, July 2007 revision, page 1. The data necessary to conduct a proper audit depends on the 1 mnature of the audit; and the Government Accounting Standards details the requirements.
The Auditor interprets the phrase “confidential or otherwise” found in LSA-R.S. 24:513 I to include privileged documents. After careful examination of the law, we do not agree. Certain duties of the Auditor and his concomitant authority to access, examine, and copy documents in the possession of an auditee are set forth in LSA-R.S. 24:513, which provides, in pertinent part, as follows:
A. (l)(a) Subject to Paragraph (3) of this Subsection, the legislative auditor shall have authority to compile financial statements and to examine, audit, or review the books and accounts of the state treasurer, all public boards, commissions, agencies, departments, political subdivisions of the state, public officials and employees, public retirement systems enumerated in R.S. 11:173(A), municipalities, and all other public or quasi public agencies or bodies, hereinafter collectively referred to as the “au-ditee”. The scope of the examinations may include financial accountability, legal compliance and evaluations of the economy, efficiency, and effectiveness of the auditee’s programs or any combination of the foregoing. In addition to the authority granted above, the legislative auditor shall have access to and be permitted to examine all papers, books, accounts, records, files, instruments, documents, films, tapes, and any other forms of recordation of all auditees, including but not limited to computers and recording devices, and all software and hardware which hold data, is part of the technical processes leading up to the retention of data, or is part of the security system. This access shall not be prohibited by Paragraph (3) of this Subsection.
[[Image here]]
E. In the performance of his duties as herein stated, the legislative auditor, or any member of his staff designated by him, shall have the power to inspect and to make copies of any books, records, instruments, documents, files, films, tapes, and other forms of recordation, including but not limited to computer and recording devices, of the auditee. He may call upon the auditee and any of its officials and staff for assistance and advice, and such assistance shall be given through the assignment of personnel or in such other manner as necessity requires.
[[Image here]]
I. The authority granted to the legislative auditor in this Section to examine, audit, inspect or copy shall extend to all ■J^books, accounts, papers, documents, records, files, instruments, films, tapes, and any other forms of recordation, including but not limited to computers and recording devices, whether confidential or otherwise. However, the legislative auditor shall comply with any and all restrictions imposed by law on documents, data, or information deemed confidential by law and furnished to the legislative auditor, (emphasis added).
[[Image here]]
M.(l) In the performance of his duties the legislative auditor, or any member of his staff designated by him, may compel the production of public and private books, documents, records, papers, films, tapes, and electronic data processing media. For such purpose the legis *861 lative auditor and the chairman of the Legislative Audit Advisory Council may jointly issue a subpoena for the production of documentary evidence to compel the production of any books, documents, records, papers, films, tapes, and electronic data processing media regarding any transaction involving a governmental entity.
The Department contends that there is a difference between information that is “privileged” (ie., protected by a recognized legal privilege) and information that is “confidential.” It argues that the data to which the Auditor has been granted access pursuant to LSA-R.S. 24:513 cannot and does not extend to privileged data, nor to information that is part of the deliberative process. In support, the Department argues that while the language of LSA-R.S. 24:513, as set forth in LSA-R.S. 24:513 I, refers to and authorizes the Auditor to access confidential information, the statute omits (and therefore does not allow for) access to privileged information.
The attorney-client privilege is recognized by the legislature in LSA-C.E. art. 506, which specifically provides that “[a] client has a privilege to refuse to disclose, and to prevent another person from disclosing, a confidential communication” under certain circumstances.[8] LSA-C.E. art. 506B. It is a very important privilege, with a long jurisprudential history. See Frank L. Maraist, Evidence and Proof in 19 Louisiana Civil Law Treatise, § 8.6 (2d ed.2007). The deliberative process privilege protects “confidential intra-agency advisory opinions disclosure of which would be injurious to the consultative functions of government.” Kyle v. Louisiana Public Service Commission, 878 So.2d at 659, quoting Taxation With Representation Fund v. Internal Revenue Service, 646 F.2d 666, 677 (D.C.Cir.1981).
The Auditor contends that the requirement of LSA-R.S. 24:513 I that the Auditor maintain confidentiality of any confidential documents received is sufficient to safeguard the privileges. While the legal requirement regarding the confidentiality is correct, and is sufficient to prevent access to documents pursuant to the Public Records Law, we do not find it persuasive in this context. See Kyle v. Perrilloux, 02-1816 (La.App. 1 Cir. 11/7/03), 868 So.2d 27. We note the mandate of LSA-R.S. 24:513 I that the Auditor comply with any and all “restrictions imposed by law.” A “privilege” constitutes a “restriction imposed by law.” Further, the law controls how the Auditor must treat the information it receives. The Auditor must maintain confidentiality. However, this does not answer the question before us, which is whether the Auditor has a right to receive the information in the first place.
We find merit in the Department’s assertion that the language of LSA-R.S. 24:513, which grants the Auditor broad access to information, “confidential or otherwise,” does not extend to “confidential” communications that might be subject to an evidentiary privilege. We note that Louisiana Code of Evidence article 1101 A(2) provides, in pertinent part, with regard to privileges:
Furthermore, except as otherwise provided by legislation, Chapter 5 of this Code with respect to testimonial privi *862 leges applies to all stages |iaof all actions, cases, and proceedings where there is power to subpoena witnesses, including administrative, ... legislative, ... and judicial proceedings.
Additionally, there are numerous instances in the law where the legislature has explicitly mentioned, or differentiated “confidential” from “privileged” in order to show whether it intended the words “confidential or otherwise” to encompass privileged material. Statutes have repeatedly designated when a privilege is to be included when dealing with information or communications. One example is found in Title 24, and particularly references the Department. Subsection C of LSA-R.S. 24:775 provides that “[t]he commissioner [of insurance] shall furnish the committee [legislative committee] with all information and data which the committee requests except for any such information which is privileged or confidential by law.” See also LSA-R.S. 22:2, LSA-R.S. 22:689, LSA-R.S. 40:1232.7.
Had the legislature intended privileged information to be included in LSA-R.S. 24:513 I, it would have said “confidential, privileged, or otherwise,” and not just “confidential or otherwise.” Information that is privileged is always confidential, but confidential information is not always privileged. When the legislature intends for privileged information to be overridden by statute, the statute clearly indicates that the privilege is trumped by the statute. In the present case, there is no indication that the statute in question is specifically intended to supplant any privilege. Due to the importance of the attorney-client privilege, any doubt as to whether privilege should be encompassed by the words “confidential or otherwise” should be resolved in favor of the two words’ separate natures in order to preserve the privilege.
We find further support for this position by interpreting the provisions of Chapter 8 of Title 24 only. The legislature repeatedly employs the qualifier, “in the performance of his duties” when providing for the authority of the |14Auditor. We are led inescapably to the conclusion that the access to information granted to the Auditor is only to include information that is reasonably related to a lawfully performed audit. Therefore, we find that an auditee has the right to challenge access to any documents that it believes it is not legally required to submit. In the case of disputes regarding the necessity for receipt of documents in order for the Auditor to lawfully perform his duties, the district court must resolve the dispute, and in camera inspections are available for balancing the need to protect privileged documents with the requirement for transparency in fiscal matters involving public funds. Further, considering the vital roles and competing interests of the Auditor and Department in serving the people of Louisiana and the need for openness and prompt resolution of disputes that arise in the auditing process, it is imperative that any legal challenge be decided expeditiously so as to avoid undue delay. There is a compelling interest to do so.
CONCLUSION
We conclude that an auditee’s duty to provide information to the Auditor in connection with an audit is restricted by evi-dentiary privileges, whether legislatively enacted or jurisprudentially created. We further conclude, that any dispute between the Auditor’s office and an auditee must be resolved in accordance with the statute, i.e., that a subpoena must be filed jointly by the Auditor and the Legislative Audit Advisory Council. If the documents subpoenaed are not provided, then an action may be initiated in the appropriate district *863 court, which must be heard expeditiously. An auditee also has the right to seek a ruling from the district court as to whether the documents sought by the auditor’s office are legally required to be submitted. Accordingly, we find error in the trial court’s conclusion that the Department failed to state a cause of action for a judgment declaring that the type of | ^information enumerated in LSA-R.S. 24:513 A(1)(a) excludes documents protected by the attorney-client and deliberative process privileges.
For the above and foregoing reasons, that portion of the trial court’s August 7, 2009 judgment granting the exception raising the objection of no cause of action is reversed. This matter is remanded for further proceedings, if necessary. Costs of this appeal in the amount of $1,697.49 are assessed against the Auditor.
REVERSED AND REMANDED.
WHIPPLE, J. dissents, for reasons assigned.

. References to the Auditor in this opinion include members of his staff authorized to act on his behalf.

. Louisiana Revised Statutes 24:513 H provides, “All auditees and their officials and staff are hereby directed to assist the legislative auditor in his work and to furnish such information, reports, aid, services, and assistance as may be requested, all without any cost or charge. It shall be the duty of the attorney general and the local district attorney to give assistance to the legislative auditor. The attorney general shall render his opinion in writing on any subject requested by the legislative auditor.”

. The Auditor, explaining that the letter was not sent specifically to single out the Department for any improper purpose, testified that it was “a standard letter that our office sends when we have not gotten full cooperation from an auditee.”

. Testimony in the trial court established that the attorney general’s office did investigate the matter, but did not find any evidence of fraud that would necessitate taking further action.

. The only exception addressing the Department’s request for a declaratory judgment on privileged information was the peremptory exception raising the objection of no cause of action.

. The financial condition of the State obviously is a concern that all branches of government consider, but the control of monies and responsibility for fiscal policy statewide is shared between the legislative and executive branches.

. A "confidential” communication is further defined as a communication that "is not intended to be disclosed to persons other than” those to whom the disclosure is made in furtherance of obtaining or rendering professional legal services, those reasonably necessary for the transmission of the communication, and, when special circumstances warrant, those who are present at the behest of the client and are reasonably necessary to facilitate the communication. LSA-C.E. art. 506(A)(5).