*** FOR PUBLICATION IN WEST'S HAWAI'I REPORTS AND PACIFIC REPORTER ***

**Electronically Filed
Supreme Court
SCAP-21-0000701
05-APR-2023
08:31 AM
Dkt. 23 OP**

IN THE SUPREME COURT OF THE STATE OF HAWAI'I

---o0o---

---

THE OFFICE OF HAWAIIAN AFFAIRS and
THE BOARD OF TRUSTEES OF THE OFFICE OF HAWAIIAN AFFAIRS,
Plaintiffs-Appellees,

vs.

LESLIE H. KONDO, in his official capacity as State Auditor, and
STATE OF HAWAI'I OFFICE OF THE STATE AUDITOR,
Defendants-Appellants.

---

SCAP-21-0000701

CERTIORARI TO THE INTERMEDIATE COURT OF APPEALS
(CAAP-21-0000701; CASE NO. 1CCV-20-0000259)

APRIL 5, 2023

RECKTENWALD, C.J., NAKAYAMA, McKENNA, AND EDDINS, JJ.,
AND WILSON, J., ASSIGNED BY REASON OF VACANCY

OPINION OF THE COURT BY EDDINS, J.

In this declaratory action, two constitutionally created

state agencies square off over two major laws, Hawai'i Revised

Statutes (HRS) § 23-5 (2009 & Supp. 2014) and the attorney-client privilege, codified in HRS Chapter 626.

The Office of the Auditor believes HRS § 23-5 empowers it to receive *all* records of an auditee, even attorney-client communications.  The Office of Hawaiian Affairs, the subject of an audit, sued.  It argues HRS § 626-1, Rule 503 (2016), the lawyer-client privilege, overcomes the auditor's authority and preserves the confidentiality of attorney-client communications.

We hold that the Office of the Auditor lacks authority to pierce the attorney-client privilege and obtain an auditee's confidential communications.

We also reject the Office of the Auditor's jurisdiction and non-justiciability bars to the Office of Hawaiian Affairs' suit.

**I.**

In 2019 the Hawai'i Legislature directed an audit of the Office of Hawaiian Affairs.  Act 37, the Office of Hawaiian Affairs Appropriations Act of 2019, conditioned the release of OHA's 2020-2021 general funds upon the legislature's receipt of an audit report "no later than twenty days prior to the convening of the regular session[] of 2020."  2019 Haw. Sess. Laws Act 37, § 9 at 97.

Per this legislative directive, Defendants Leslie H. Kondo, in his official capacity as State Auditor, and the State of Hawai'i Office of the Auditor, began an audit of Plaintiffs, the

2

Office of Hawaiian Affairs and the Board of Trustees of the Office of Hawaiian Affairs (collectively, OHA).

The Auditor asked OHA to hand over lots of records. One tranche requested OHA's unredacted executive sessions minutes from 2006-2019. Because the executive session minutes contained privileged attorney-client communications, OHA proposed giving the Auditor redacted minutes.

This dissatisfied the Auditor. The Office of the Auditor has unlimited power to access all OHA records, he told OHA. The Auditor's authority extends to OHA's privileged attorney-client communications. In an email to OHA, Kondo outlined his stance: "It is our position that section 23-5, HRS, provides us with the authority to access all records maintained by an auditee, including attorney-client communication[s] and other records that are not accessible by the public, like minutes to executive sessions."

OHA resisted. Kondo repeated his position: per HRS § 23-5, "we have access to all records, with no exception[s]." In turn, OHA recapped its position: the law lets the Auditor access records, but attorney-client communications are off-limits. OHA gave the Auditor all requested executive session minutes with redactions for confidential attorney-client privileged information.

A stalemate ensued.

3

Then the Auditor packed up his audit, explaining in a late December 2020 letter to OHA that he could not finish the audit without OHA's attorney-client communications. Unless he had access to the unredacted executive session minutes, Kondo wrote, there was "an unreasonable risk" that the Office of the Auditors' "findings, conclusions, and recommendations may be based on improper or incomplete information."

Before suspending the audit, Kondo told OHA that he had "the ability to if necessary to subpoena records, or subpoena people" but that "I don't believe we ever need to pull that trigger for a State Agency. I believe a State Agency must cooperate." Ultimately, Kondo chose not to use his subpoena power.

No audit report was prepared. So OHA did not receive its 2020-2021 general funds. Later though, in 2021, the legislature amended Act 37 to remove the audit precondition and released the previous year's general funds allocation to OHA. See 2021 Haw. Sess. Laws Act 29, § 8 at 50.

After the suspension of the audit, but before OHA received the funds, OHA sued Kondo and the Office of the Auditor. In February 2020, OHA filed a two-count complaint for declaratory relief in the Circuit Court of the First Circuit.

Count 1 sought a declaratory judgment that the Auditor violated Act 37 by failing to submit an audit report. Later, by

4

stipulation, the circuit court dismissed this count in October 2021.

As to Count 2, OHA sought a declaratory judgment "that neither HRS Chapter 23 nor the Hawai'i State Constitution requires OHA to disclose to the State Auditor privileged attorney-client communications protected from disclosure."

OHA moved for summary judgment. OHA argued that HRS § 23-5 does not allow the Auditor to look at its privileged attorney-client communications.

The Office of the Auditor moved for judgment on the pleadings. It argued that HRS § 23-5 gave the Auditor authority to access *all* auditee records. Kondo also moved to dismiss based on lack of jurisdiction and several non-justiciability doctrines: standing, mootness, no advisory opinions, and political question.

Before ruling on the motions, Circuit Court Judge Jeffrey Crabtree reviewed OHA's redacted and unredacted executive sessions minutes in camera. The court "saw the issue of in camera review as related to defendant's motion to dismiss" for lack of jurisdiction, explaining that "by actually determining the factual and legal status of the redacted documents as attorney-client privileged material, the court has resolved an important issue and can move forward without risk of issuing a hypothetical ruling based on 'if' or 'assuming' the redacted

5

documents are protected by the attorney-client privilege." Nearly all the redactions were attorney-client communications, the court found.

The circuit court sided with OHA, granting its motion for summary judgment and denying the Auditor's motion for judgment on the pleadings. HRS § 626-1, Rule 503 controlled, not HRS § 23-5, the court ruled:

> [T]he key legal issue here is whether HRS [§] 23-5 or Chapter 626, and in particular Rule 503, wins if it's an arm wrestle match between those two statutes. . . . [T]here's good arguments on both sides, but I'm siding in favor of Rule 503 being more specific and more controlling than 23-5 is . . . . I think there's true value in protecting the attorney-client privilege.

In September 2020, the circuit court issued a minute order and short-form orders that granted OHA's motion and denied the Auditor's motion. The minute order detailed the court's document review and explained its decision:

> There is no question whatsoever that the vast majority of the redactions are attorney-client communications. The un-redacted portions show Board members discussing all manner of legal issues with their counsel present. This includes but is not limited to items on the Board's public agenda, including updates from counsel about ongoing litigation, confidential personnel issues, legal authority necessary or helpful to guide Board decision-making, and much more. The redacted information is confidential by law (e.g., OHA is entitled to move into Executive Session to discuss it), and clearly covered by the attorney-client privilege as well.

The court entered a final judgment for OHA in November 2021.

The Office of the Auditor appealed. Then OHA applied for transfer to this court, and we accepted.

6

Kondo argues there is no subject matter jurisdiction and offers his non-justiciability arguments.

About the merits, Kondo says HRS § 23-5 empowers him to review all OHA records. He acknowledges that OHA's executive session minutes contain privileged attorney-client communications. But *all* has no exceptions: "There is no carve-out for privileged records.[]" Kondo also maintains that disclosure to the Office of the Auditor does not waive the attorney-client privilege because it is "mandatory, not voluntary." Kondo asks us to reverse the circuit court's orders and judgment.

OHA counters that the circuit court got it right. OHA may seek judicial relief and has the right to shield its attorney-client communications from the Auditor's prying eyes. OHA rejects the Auditor's waiver of privilege position. Handing over its privileged communications without a court order constitutes a voluntary disclosure and waives the attorney-client privilege, asserts OHA.

## II.

First, we address the Office of the Auditors' non-justiciability arguments. We hold that our courts have jurisdiction, and there are no justiciability barriers to OHA's case.

7

Hawai'i has a declaratory action framework that advances access to the justice system. HRS Chapter 632's purpose is to "afford relief from the uncertainty and insecurity attendant upon controversies over legal rights . . . with a view to making the courts more serviceable to the people." HRS § 632-6 (2016). Our declaratory action laws are "liberally interpreted and administered." Id.

In declaratory actions, HRS § 632-1(a) (2016) covers subject matter jurisdiction, and HRS § 632-1(b) covers standing. See Tax Found. of Hawai'i v. State, 144 Hawai'i 175, 186–88, 439 P.3d 127, 138–40 (2019).

Declaratory actions require an "actual controversy." HRS § 632-1(a). Otherwise, there is no subject matter jurisdiction. Tax Found., 144 Hawai'i at 192-94, 439 P.3d at 144-46. A party cannot simulate a dispute or make-up a hypothetical. Id. at 196, 439 P.3d at 148.

The Office of the Auditor asserts that OHA's "real controversy" involves others. "If the funds were not released, it was because of the way the Legislature wrote the provisos in Act 37, or because the executive branch exercised its authority on the release, non-release, or partial release of funds, and not due to the suspension of the audit." Also, because OHA just wanted the general funds, and ultimately got the money, there is no jurisdiction, the Auditor says.

The Auditor overlooks count 2. The parties stipulated to dismiss count 1. The case no longer concerns the Auditor's suspension of the audit and OHA's general funds.

Count 2 remains. OHA and the Auditor's quarrel concerns statutory interpretation, classic fare for declaratory actions. "Controversies involving the interpretation of . . . statutes" may be determined by the courts. HRS § 632-1(a). Hawai'i's declaratory action law also broadly allows declaratory relief "in other situations involving other antagonistic assertions or denial of rights." See Tax Found., 144 Hawai'i at 193, 439 P.3d at 145.

OHA's suit involves the Office of the Auditor's statutory power under HRS § 23-5 and Hawai'i Rules of Evidence (HRE) Rule 503, the lawyer-client privilege, codified in HRS Chapter 626. The dispute is real, not conjectural. Count 2 presents a prototypical declaratory action. There is an actual controversy. Our courts have jurisdiction.

Next, standing. Standing is about the role of courts in a democratic society – a service to our tripartite system that favors the courtroom as a space to resolve controversy. Life of the Land v. Land Use Comm'n, 63 Haw. 166, 172, 623 P.2d 431, 438 (1981). Standing has a prudential spirit. Tax Found., 144 Hawai'i at 196, 439 P.3d at 148.

HRS § 632-1(b) covers standing in declaratory actions. Id. This court has detailed when a party has standing to bring an action for declaratory relief:

> (1) . . . antagonistic claims exist between the parties
>
>> (i) that indicate imminent and inevitable litigation, or
>>
>> (ii) where the party seeking declaratory relief has a concrete interest in a legal relation, status, right, or privilege that is challenged or denied by the other party, who has or asserts a concrete interest in the same legal relation, status, right, or privilege; and
>
> (2) a declaratory judgment will serve to terminate the uncertainty or controversy giving rise to the proceeding.

Id. at 201, 439 P.3d at 153.

OHA's complaint satisfies both the "imminent and inevitable" *and* "concrete interest" paths to standing.

OHA has a concrete interest in safeguarding its attorney-client communications. And it has an interest to see if its privilege claim stands up against the Auditor's interest that HRS § 23-5 requires disclosure. The controversy is real.

Turning to the law's "imminent and inevitable" disjunctive, because he never issued a subpoena duces tecum, the Auditor argues that litigation was not inevitable. Litigation is only imminent and inevitable, if he "pulls the trigger" and uses his subpoena power, Kondo claims. And because he didn't, OHA lacks standing.

10

OHA's complaint anticipates the Auditor's argument:

> This action is justiciable because litigation is imminent and inevitable either because the State Auditor will attempt to exercise his subpoena power under HRS section 23-5(c)and OHA will move to quash, or OHA will file an action to prospectively enjoin the State Auditor from exercising his subpoena power to obtain OHA's attorney-client privileged communications.

OHA says that if the Auditor issues a subpoena duces tecum for its unredacted executive session minutes, then it will counter with a Hawai'i Rules of Civil Procedure (HRCP) Rule 45 motion to quash.  See HRS § 23-5(c) ("Upon application by the auditor" circuit court may enforce subpoena "in the same manner as a subpoena issued by the clerk of the circuit court.").  OHA's complaint also signals it will seek declaratory and injunctive relief.  OHA satisfies both HRS § 632-1(b)(1) disjunctives.

The Auditor's decision not to subpoena OHA's records is odd.  The legislature has given the Auditor subpoena power.  See HRS § 23-5(c) (auditor may issue a subpoena duces tecum "compelling the production of accounts, books, records, files, papers, documents, or other evidence, which the auditor reasonably believes may relate to an audit or other investigation being conducted under this chapter.").  If, as the Auditor asserts, the audit "may be based on improper or incomplete information" and cannot be prepared unless he views OHA's privileged attorney-client communications, then there is no good reason for the Office of the Auditor to ditch the very

11

tool that might pry information from OHA.  The Auditor gives no explanation.

Ultimately, the Auditor's choice left OHA with only one option.  OHA sued for declaratory relief.  A declaratory judgment will terminate the uncertainty underlying the legal issue.  OHA has standing.

Turning to mootness, a case becomes moot when "it has lost its character as a present, live controversy of the kind that must exist if courts are to avoid advisory opinions on abstract propositions of law."  Kaho'ohanohano v. State, 114 Hawai'i 302, 332, 162 P.3d 696, 726 (2007).

The Office of the Auditor argues that the case became moot once "OHA decided to withhold the unredacted minutes and the Auditor suspended the audit."  We disagree.

Because OHA's requested relief focuses on its attorney-client privilege – not the suspension of the audit or the appropriation and release of funds – the case is live, not moot.  The Auditor packing up the audit, or the legislature reinstating the funds, has nothing to do with count 2.  Since OHA asks for a declaratory judgment about the confidentiality of its privileged communications, the effective remedy remains and has not been compromised.  Wong v. Bd. of Regents, Univ. of Hawai'i, 62 Haw. 391, 394, 616 P.2d 201, 203-04 (1980).

The case is not moot.  But we address an exception to the mootness doctrine.  OHA satisfies each step of the "public interest exception."

The public interest exception applies when the issue "affects the public interest and an authoritative determination is desirable for the guidance of public officials."  See Kaho'ohanohano, 114 Hawai'i at 333, 162 P.3d at 727.  This court applies the public interest exception when (1) *public*, not private, interests are affected; (2) guidance for public officers is sensible; and (3) the issue is apt to repeat.  Id.

Here, the exception applies.  First, this is a clash between two constitutionally created state government agencies.  Article XII section 5 of the Hawai'i Constitution established the Office of Hawaiian Affairs, and article VII, section 10 established the Office of the Auditor.  Not only does the public have an interest in resolving a dispute between these two state heavyweights, but the issue presented – interpretation of major statutes – also has public importance.

Second, this case offers a chance to guide public officers. It will clarify how the Office of the Auditor and an auditee tread when disclosure of privileged communications is at stake.

Third, this issue is apt to resurface.  The Auditor regularly conducts audits of agencies and issues reports. Because the Office of the Auditor maintains that it has

13

authority to review attorney-client communications, the Auditor's authority will likely arise in future audits.

OHA and the Office of the Auditor are themselves likely to tangle again. At least every four years they interact. "The auditor shall conduct an audit of [OHA] at least once every four years." HRS § 10-14.55 (2009). There is no reason to think the stalemate will not repeat.

Mootness and the no advisory opinion doctrine are closely related non-justiciability doctrines. Here we conclude that there is no advisory opinion about an abstract proposition of law. Kaho'ohanohano, 114 Hawai'i at 332, 162 P.3d at 726.

Next, we address the argument that the case concerns a political question.

A non-justiciable political question involves an issue that is more appropriate for the executive or legislative branch. Baker v. Carr, 369 U.S. 186, 210 (1962) ("[t]he nonjusticiability of a political question is primarily a function of the separation of powers"). The political question doctrine bars issues that are too political to embroil the judiciary. Trustees of the Office of Hawaiian Affairs v. Yamasaki, 69 Haw. 154, 172, 737 P.2d 446, 456-57 (1987).

We reject Kondo's argument that there are no "judicially discoverable and manageable standards" to evaluate the case.

14

Baker, 369 U.S. at 217 (detailing this standard and five more criteria to govern the wisdom of judicial intervention.)

OHA asks us to decide whether HRS § 23-5 allows the Auditor access to OHA's privileged attorney-client communications. Statutory interpretation is the judiciary's forte, central to its mission. A legal ruling does not intrude on another governmental branch.

Also, the legislature outlines a process (issue subpoenas duces tecum) to resolve disputes regarding materials withheld by an audit's subject. See HRS § 23-5(c). The statute itself suggests there are judicially manageable standards to end the dispute.

Lastly, the Office of the Auditor does not have sovereign immunity.

"The State's sovereign immunity does not bar actions seeking prospective declaratory or injunctive relief." Gold Coast Neighborhood Ass'n v. State, 140 Hawai'i 437, 464, 403 P.3d 214, 241 (2017)). OHA's relief is prospective. OHA's complaint asks for a ruling that Hawai'i law protects the disclosure of its privileged communications during *any* state audit. Also, because Count 2 asks for declaratory relief, not compensation, the Office of the Auditor has no sovereign immunity. Pele Def. Fund v. Paty, 73 Haw. 578, 609-10, 837 P.2d 1247, 1266 (1992).

**III.**

We go to the merits.

OHA seeks a declaratory judgment that HRS § 23-5 does not require it to "disclose to the State Auditor privileged attorney-client communications protected from disclosure pursuant to HRE 503 and common-law principles."

The Office of the Auditor opposes declaratory relief.  It points to HRS § 23-5, titled "Auditor; powers" and claims it has power to obtain an auditee's privileged attorney-client communications.  The Auditor "may examine and inspect all accounts, books, records, files, papers, and documents and all financial affairs of every . . . agency."  HRS § 23-5(a).

Kondo believes those words – primarily one word, *all* – confer "unlimited" power.  He says HRS § 23-5 allows him to review all auditee records in their entirety, even attorney-client communications.  No exceptions, all means all.  Plus, the Auditor insists, he does not need to use his subpoena power to obtain the records.  See HRS § 23-5(c)(2) (auditor may "compel[] the production of accounts, books, records, files, papers, documents or other evidence, which the auditor reasonably believes may relate to an audit or other investigation being conducted under this chapter.")

**A.**

The Auditor contends that HRS § 23-5 and HRE Rule 503 do not conflict. And because there is no conflict, the Auditor's superior powers snap the attorney-client privilege. But "even if the two statutes did conflict," the Auditor adds, HRS § 23-5 is "more specific" and prevails over HRE Rule 503 that way too.

We reject the Office of the Auditor's position.

We hold that unless an audit's subject waives the attorney-client privilege, or a court orders disclosure, the Office of the Auditor may not access an auditee's privileged attorney-client communications.

Generally, two laws conflict when they "are explicitly contrary to, or inconsistent with, each other." Boyd v. Hawaii State Ethics Comm'n, 138 Hawaiʻi 218, 227, 378 P.3d 934, 943 (2016) (cleaned up) (charter school employee subject to two distinct statutory regimes as to standards involving conflicts of interest). But if laws can be interpreted harmoniously, there is no conflict. "Two statutes conflict where it is not possible to give effect to both." Carmichael v. Bd. of Land & Nat. Res., 150 Hawaiʻi 547, 567, 506 P.3d 211, 231 (2022) (cleaned up).

The two laws in this case do not conflict. The Auditor's powers and the attorney-client privilege can coexist. The laws are not explicitly contrary or inconsistent. And courts (like

17

the circuit court here) can read HRE Rule 503 and HRS § 23-5 in harmony, giving effect to both statutes. The laws do not need to incompatibly collide. HRS § 23-5 says so.

HRS § 23-5 has a buffer to address privileged communications. HRS § 23-5(c) gives the Auditor subpoena duces tecum power and directs a circuit court to enforce it "in the same manner as a subpoena issued by the clerk of the circuit court." That is, per HRCP Rule 45, "the court, upon motion . . . may (1) quash or modify the subpoena if it is unreasonable and oppressive . . . ."

HRS § 23-5 anticipates challenges to a subpoena's validity. The law's language foreshadows grounds - like privileges - that may curb the auditor's power to access records. The Auditor's authority "is hemmed by the constitution and the safeguards of the statute itself." In re KAHEA, 150 Hawai'i 43, 51, 497 P.3d 58, 66 (2021) (referring to the Attorney General's subpoena power). A subpoena that seeks an auditee's privileged attorney-client communications is an uncomplicated candidate for court quashing or modifying. HRS § 23-5 and in the end, the court, limit the Auditor.

This check also springs from the attorney-client privilege's centuries-long permanence. It "is the oldest of the privileges for confidential communications known to the common law." Upjohn Co. v. United States, 449 U.S. 383, 389 (1981)

18

(citing 8 J. Wigmore, Evidence § 2290 (McNaughton rev. 1961)). HRE Rule 503, the "Lawyer-client privilege," codifies the common law attorney-client privilege. A client may invoke that privilege to prevent disclosure of "confidential communications made for the purpose of facilitating the rendition of professional legal services . . . ." HRS § 626-1, Rule 503.

The privilege's singular value means that only waiver, see HRE Rule 511 (2016), or a lawyer-client privilege exception, see HRE Rule 503(d) (2016), may allow a court to disclose privileged attorney-client communications. For government lawyers and their agency clients, the Sunshine Law's narrower attorney-client exception may also result in disclosure. See HRS § 92-5(a)(4) (2012) (closed board meeting allowed "[t]o consult with the board's attorney on questions and issues pertaining to the board's powers, duties, privileges, immunities, and liabilities"); Civ. Beat L. Ctr. for the Pub. Int., Inc. v. City & Cnty. of Honolulu, 144 Hawai'i 466, 489, 445 P.3d 47, 70 (2019) (closed meeting must strictly conform to an exception and "executive sessions must be purposeful and unclouded by pretext").

The Auditor claims the court failed to consider whether OHA's invocation of the attorney-client privilege also satisfied HRS § 92-5(a)(4). He contends the circuit court "completely glossed over whether a member of the public making the same

19

request would have been allowed to see what the Auditor asked to see."  Contrary to Kondo's assertion, the parties submitted supplemental briefing that covered HRS § 92-5(a)(4).  Then, after reviewing the redacted materials, the court ruled that both § 92(5)(a)(4) *and* HRE 503 protected OHA's executive session minutes: "The redacted information is confidential by law (e.g., OHA is entitled to move into Executive Session to discuss it), and clearly covered by the attorney-client privilege as well."

Returning to the statutes' interplay, HRS § 23-5 simply does not give the Auditor superpower to pop the attorney-client privilege.  The Auditor offers no case law to support his stance.

The Auditor also argues that HRS § 23-5 prevails because it is more specific.  But a specificity argument is mostly unhelpful when there is no conflict and the laws can be harmonized.  Mahiai v. Suwa, 69 Haw. 349, 356–57, 742 P.2d 359, 366 (1987) (courts favor a specific law over a general law when there is an irreconcilable conflict, however, when the statutes "overlap in their application, effect will be given to both if possible") (citing State v. Kuuku, 61 Haw. 79, 82, 595 P.2d 291, 294 (1979)).

Some laws are powerhouses.  Here, even if the laws are inconsistent, HRS § 626-3's direct language supports the attorney-client privilege's supremacy.  "If any other provision

of law, including any rule promulgated by the supreme court, is inconsistent with this chapter, this chapter *shall govern* unless this chapter or such inconsistent provision of law specifically provides otherwise." HRS § 626-3 (2016) (emphasis added). Nothing in chapter 626 allows the Auditor (or anyone) to bulldoze HRE Rule 503. And nothing in HRS § 23-5 provides an express override of the lawyer-client privilege. So, if the statutes conflict, HRS § 626-1, Rule 503 pins HRS § 23-5.

Kondo says that reliance on HRS § 626-3 is misplaced. He argues the attorney-client privilege only applies to adjudicative proceedings. The privilege, though, covers "confidential communications made for the purpose of facilitating the rendition of professional legal services," HRE Rule 503(b). Naturally, these communications may precede an adjudicative proceeding or court case: the lawyer-client privilege applies when an individual seeks legal advice "from a professional legal advisor in [their] capacity as such." Sapp v. Wong, 62 Haw. 34, 38, 609 P.2d 137, 140 (1980) (cleaned up)).

**B.**

We turn to the Auditor's position that OHA does not waive its lawyer-client privilege if it discloses confidential communications during an audit.

Society values the secrecy of attorney-client communications. A compact guides these exchanges. Business,

government, and the legal system operate within a trusty framework that shelters "confidential communications made for the purpose of facilitating the rendition of professional legal services" between lawyer and client. HRE Rule 503(b). Absent an understanding that words remain confidential, they may not be spoken at all. "The privilege recognizes that sound legal advice or advocacy serves public ends and that such advice or advocacy depends upon the lawyer's being fully informed by the client." Upjohn, 449 U.S. at 389.

A public entity must be able to freely and fully consult legal counsel. A government agency is a client worthy of the privilege's protections. See United States v. Jicarilla Apache Nation, 564 U.S. 162, 170 (2011) (quoting Restatement (Third) of the Law Governing Lawyers § 74 (2000)) ("[G]overnmental agencies and employees enjoy the same privilege as nongovernmental counterparts").

Like any holder of the privilege, a government client may waive the lawyer-client privilege. "A person upon whom these rules confer a privilege against disclosure waives the privilege if, while holder of the privilege, the person or the person's predecessor voluntarily discloses or consents to disclosure of any significant part of the privileged matter." HRE Rule 511.

OHA refuses to waive its privilege.  OHA maintains that if it caves to the Auditor without a court order, it waives the attorney-client privilege.

The Auditor insists that OHA does not waive the privilege if OHA gives him what he wants.  He points to HRS § 23-9.5 (2009): "[t]he auditor shall not be required to disclose any working papers."  If Kondo promises OHA he won't tell anybody, his argument seems to run, then OHA hasn't waived the privilege and should hand over its attorney-client communications.  The Auditor also claims that complying with his demands make OHA's disclosure "involuntary," and thus OHA does not waive its privilege.

Not so.  Just because the auditor "shall not be required to disclose" records, does not mean the Auditor will not or cannot disclose records containing privileged communications, or will not mention privileged communications in an audit report.  Also, HRS § 23-5 gives no assurance that any "involuntary" disclosure will withstand challenge and remain confidential.  With no protection, OHA's counsel made the right call – the only one consistent with a lawyer's professional and ethical obligations.  See Hawai'i Rules of Professional Conduct Rule 1.6(a) ("A lawyer shall not reveal confidential information relating to the representation of a client unless the client consents after consultation.").

**IV.**

We affirm the Circuit Court of the First Circuit's September 10, 2020 Orders.

<div style="display:flex;">
<div>

Douglas S. Chin
(Patricia Ohara, Robyn B. Chun,
Kukui Claydon on the briefs)
for appellants

Kurt W. Klein
(Robert G. Klein, David A.
Robyak, James M. Yuda on the
briefs)
for appellees

</div>
<div>

/s/ Mark E. Recktenwald

/s/ Paula A. Nakayama

/s/ Sabrina S. McKenna

/s/ Todd W. Eddins

/s/ Michael D. Wilson

</div>
</div>

