# In the Iowa Supreme Court

No. 24–1160

Submitted March 25, 2026—Filed April 17, 2026

## City of Davenport,

Appellant,

vs.

## Office of Auditor of State of Iowa,

Appellee.

Appeal from the Iowa District Court for Scott County, Jeffrey D. Bert, judge.

A city seeks interlocutory review of a district court order determining that the auditor of state may have access to attorney–client privileged materials. **District Court Ruling Reversed and Case Remanded.**

Mansfield, J., delivered the opinion of the court, in which all participating justices joined. Waterman, J., took no part in the consideration or decision of the case.

Brett R. Marshall (argued) and Richard A. Davidson of Lane & Waterman LLP, Davenport, for appellant.

John McCormally (argued), General Counsel to the Iowa Auditor of State, for appellee.

Brenna Bird, Attorney General, and Eric Wessan, Solicitor General, for amicus curiae State of Iowa.

**Mansfield, Justice.**

### I. Introduction.

The Iowa Auditor of State has authority to audit state officers and departments, political subdivisions of the state, and certain related organizations. *See* Iowa Code §§ 11.2, .6 (2024). In the course of these audits, the Auditor is granted "full access to all papers, books, records, and documents of any officers or employees," including records "required by law to be kept confidential." *Id.* § 11.41(2), (3). There are some identified exceptions, but the attorney–client privilege isn't one of them. *See id.* § 11.41(4)(*a*). We must decide whether the attorney–client privilege is nonetheless an implied exception to the Auditor's subpoena authority.

We conclude that it is. The privilege is universally recognized in Iowa, and has been since the founding of our state. We hold that the attorney–client privilege limits the Auditor's subpoena power, just as it limits the subpoena power of other investigative agencies in Iowa.

This case comes to us on interlocutory review of a district court order that granted the Auditor access to attorney–client privileged communications. We reverse that order, and we remand for further proceedings consistent with this opinion.

### II. Facts and Procedural Background.

We previously entered a procedural order in this case which summarized the facts and procedural history. *See City of Davenport v. Off. of Auditor*, 28 N.W.3d 584, 586–90 (Iowa 2025).

To summarize, this case arose from the City of Davenport's decision to settle three harassment claims brought by city employees for payments totaling approximately $1.9 million. The settlements were publicly approved by the city

council in December 2023, but allegations surfaced that they had been reached before the November 2023 city election, with the announcement intentionally delayed until after the election.

The Auditor decided to conduct a reaudit of the City, focusing on the settlements. In connection with that audit, he served a subpoena on the City. The subpoena sought, among other things, documents pertaining to the settlements and the minutes and recordings of closed city council sessions held in late 2023.

The City produced some documents but objected to producing others on the basis of the attorney–client privilege and the attorney work-product privilege. The City also filed a motion in the Scott County District Court to modify the subpoena. The Auditor countered by filing an application for enforcement of the subpoena in the same proceeding.

The district court issued two orders. In the first order, it directed that the minutes and recordings of the closed-session meetings be produced to it for in camera review. It stated,

> While the City raises legitimate concerns regarding protected communication with its attorneys, the legislature accounted for those concerns in [Iowa Code] § 11.41(4)(*a*)(4) [(providing that the auditor "shall not have access to . . . [r]ecords which represent and constitute the work product of an attorney and which relate to litigation or claims made by or against a public body")]. This section establishes that the Auditor does not have access to records that constitute attorney work product. However, the language used by the legislature in the statute favors granting the Auditor broad access to records. ("The auditor of state, when conducting any audit . . . , shall at all times have access to all information . . . ." [*Id.*] § 11.41(1); "Auditors shall have the right while conducting audits or examinations to have full access to all papers, books, records, and documents . . . ." [*Id.*] § 11.41(2)).

(Second, third, and fourth omissions in original.) Based on this legal analysis, the district court concluded that "it must be determined if the closed session

meeting minutes and/or recordings constitute attorney work product." Therefore, it ordered the in camera review.

After the City filed a motion to amend and enlarge the district court's order, the court filed a second order. The court reiterated, "The scope of Iowa Code Chapter 11 does not grant the Auditor the right to examine attorney work product but it does grant the Auditor the right to examine attorney–client privileged communications." (Footnote omitted.) The court continued, "While Iowa Code Chapter 11 carves out exceptions to the broad access granted to the Auditor; attorney–client privileged communications are not included in the exceptions." The court added that it would "conduct an *in camera* review of the closed sessions and only exclude any attorney work product and any information irrelevant to the examination."

Nonetheless, the district court modified its prior order in one respect. It ordered an evidentiary hearing "for the Court to understand what information the Auditor believes to be relevant." As the court explained, "[T]he Court requires guidance from the Auditor, with input from the City, to assist the court, during its *in camera* review, in determining what the Auditor is entitled to access pursuant to Iowa Code Chapter 11." Therefore, the court directed that its prior order "requiring an *in camera* inspection is confirmed subject to an evidentiary hearing as set forth herein."

The City filed an application for interlocutory appeal. It argued that the closed-session minutes and recordings were attorney–client privileged communications and that the district court order "adversely affects the City's substantial rights because it forces the City to disclose its statutorily protected attorney–client communications to the Auditor." No resistance was filed and, approximately two and a half months later, we granted the application.

The City's opening brief on appeal argued at length that Iowa Code section 11.41 does not give the Auditor access to attorney–client privileged information. It also argued, in two pages at the end, that there had not been a sufficient showing of a potential exception to the attorney–client privilege to warrant in camera review.

A question then arose as to whether the attorney general's office or the Auditor's general counsel would represent the Auditor on appeal. In our procedural order, we determined that the Auditor could be represented by his own general counsel and that the attorney general could file an amicus brief. *City of Davenport*, 28 N.W.3d at 586.

**III. Standard of Review.**

We review questions of statutory interpretation arising under the Open Records Act for correction of errors at law. *Ripperger v. Iowa Pub. Info. Bd.*, 967 N.W.2d 540, 548 (Iowa 2021); *see also In re Langholz*, 887 N.W.2d 770, 775 (Iowa 2016).

**IV. Legal Analysis.**

**A. Ripeness.** The Auditor and the attorney general ask that we dismiss the appeal because it is not ripe. The Auditor and the attorney general note that other events may make it unnecessary to decide whether the attorney–client privilege applies to Iowa Code Chapter 11 audits. For example, the district court may decide that the minutes and recordings are not relevant or that the privilege—if it exists—has been waived.

We are not persuaded. For one thing, with many interlocutory appeals, the ruling being reviewed may not ultimately make a difference, depending on what happens later in the case. When we grant interlocutory appeal from a denial of summary judgment, it is often possible that the appealing party could prevail at

trial. That doesn't make the appeal "unripe." *See, e.g., Rheeder v. Gray*, 23 N.W.3d 1, 12–13 (Iowa 2025); *Wilson v. Shenandoah Med. Ctr.*, 21 N.W.3d 398, 403 (Iowa 2025).

Ripeness is typically a doctrine that we apply to a *case*, not an appeal. "A case is ripe for adjudication when it presents an actual, present controversy, as opposed to one that is merely hypothetical or speculative." *Planned Parenthood of the Heartland, Inc. v. Reynolds ex rel. State*, 9 N.W.3d 37, 54 (Iowa 2024) (quoting *Barker v. Iowa Dep't of Pub. Safety*, 922 N.W.2d 581, 590 (Iowa 2019)). This case is clearly ripe. The Auditor contends that he is entitled to have the minutes and the recordings produced to him. The City urges otherwise.

The Auditor and the attorney general's ripeness arguments really go to the question of whether we should have granted interlocutory review. But no one resisted the City's application.

The Auditor and the attorney general argue that there will be a district court evidentiary hearing in any event, and we should wait until that hearing occurs. We do not agree. If we sustain the City's position that the attorney–client privilege applies even to chapter 11 audits, it appears that there will be no need for an evidentiary hearing.

Also, even if the ripeness doctrine applied here, we would agree with the City that the two-part test from our caselaw is met. *See Sierra Club Iowa Chapter v. Iowa Dep't of Transp.*, 832 N.W.2d 636, 649 (Iowa 2013) ("We have applied a two-factor inquiry for ripeness: (1) are the relevant issues sufficiently focused to permit judicial resolution without further factual development and (2) would the parties suffer any hardship by postponing judicial action?"). The district court has ruled—twice—that the attorney–client privilege does not apply to chapter 11 audits. It has ordered an evidentiary hearing that will proceed on that basis. The

applicability of the privilege is a question of law whose resolution will not be assisted by further development. And it would result in undue hardship to all parties not to decide the issue, potentially relegating them to yet another interlocutory appeal. Accordingly, we reject the ripeness arguments raised by the Auditor and the attorney general.

**B. Attorney–Client Privilege.** Although Iowa Code section 622.10(1) by its terms applies to testimony, we have long held that "[a]ny confidential communication between an attorney and the attorney's client is absolutely privileged from disclosure against the will of the client." *Konchar v. Pins*, 989 N.W.2d 150, 159 (Iowa 2023) (quoting *Keefe v. Bernard*, 774 N.W.2d 663, 669 (Iowa 2009)). As long ago as 1874, in discussing the predecessor to section 622.10(1), we said that the statute "is but declarative of the common law," and "such communications were effectually locked at the common law, and could not be revealed at all." *Barker v. Kuhn*, 38 Iowa 392, 395 (1874).

We have applied the attorney–client privilege to bar disclosure of the tape and transcript of a closed-session school board meeting at which the school district sought legal advice. *See Tausz v. Clarion-Goldfield Cmty. Sch. Dist.*, 569 N.W.2d 125, 128–29 (Iowa 1997) (en banc).

We have also held that attorney–client privileged records may be withheld in responding to an open-records request, even though there is an express exemption in the Open Records Act for attorney work product, but *not* for attorney–client privileged documents. *See Horsfield Materials, Inc. v. City of Dyersville*, 834 N.W.2d 444, 463 (Iowa 2013); Iowa Code § 22.7(4) (exempting "[r]ecords which represent and constitute the work product of an attorney, which are related to litigation or claim made by or against a public body"). Our view has been that the Open Records Act "does not affect other specific statutory

privileges recognized by the legislature, such as the attorney–client privilege." *Horsfield*, 834 N.W.2d at 463; *see also Teig v. Chavez*, 8 N.W.3d 484, 495 (Iowa 2024) (reaffirming the *Horsfield* holding and rejecting the argument that "the privilege does not apply to open records requests because chapter 22 protects work product, . . . but not attorney–client communications").

The Auditor responds that his right to information under Iowa Code section 11.41 supersedes even the attorney–client privilege. He supports his position with references to the text of section 11.41.

Section 11.41(2) provides that "[a]uditors shall have the right while conducting audits or examinations to have full access to *all* papers, books, records, and documents of any officers or employees." Iowa Code § 11.41(2) (emphasis added); *see also Sand v. Doe*, 959 N.W.2d 99, 106 (Iowa 2021) ("The Iowa Code grants the auditor of state broad access to all information when conducting an audit . . . ."). Section 11.41(3) adds that when records "are required by law to be kept confidential," the Auditor shall have access to them but shall maintain their confidentiality. Iowa Code § 11.41(3). Thus, section 11.41 implicitly authorizes the Auditor to have access even to information required by law to be kept confidential. Finally, section 11.41(4)(*a*) identifies information to which the Auditor shall not have access, but the list includes only attorney work product, not attorney–client privileged materials. *See id.* § 11.41(4)(*a*)(4). Reading section 11.41 as a whole, the Auditor maintains that he has the right to obtain attorney–client privileged materials from the City.

Although the Auditor's arguments are not without force, we conclude that the Auditor's access under section 11.41 does not extend to attorney–client privileged materials. "The privilege is 'of ancient origin' and 'is premised on a recognition of the inherent right of every person to consult with legal counsel

and secure the benefit of his advice free from any fear of disclosure.' " *Konchar*, 989 N.W.2d at 159 (quoting *Keefe*, 774 N.W.2d at 669). The privilege in Iowa exists today not just by reason of statute, but by virtue of the common law. *Squealer Feeds v. Pickering*, 530 N.W.2d 678, 683–84 (Iowa 1995) (en banc), *overruled in part on other grounds by*, *Wells Dairy, Inc. v. Am. Indus. Refrigeration, Inc.*, 690 N.W.2d 38, 48 (Iowa 2004). As the authors of an Iowa treatise have stated,

> [I]n Iowa, the common-law privilege presumably protects communications between the attorney and client from outside intrusion by legal compulsion (such as a discovery request or a subpoena), even if the attorney is not called to testify and even if the communicative information sought will not be directly introduced into evidence in a litigation proceeding.

16 Gregory C. Sisk, Mark S. Cady & Matthew C. McDermott, *Iowa Practice Series: Lawyer and Judicial Ethics* § 5:6(d)(2), at 257 (2025 ed. 2025). "Our legal system venerates the attorney–client privilege for vitally important reasons . . . ." *Fenceroy v. Gelita USA, Inc.*, 908 N.W.2d 235, 255 (Iowa 2018) (Waterman, J., dissenting).

Other investigative arms of the government, such as the grand jury, are constrained by the attorney–client privilege. *See* Iowa R. Evid. 5.1101(*c*)(2); *see also In re 2018 Grand Jury of Dallas Cnty.*, 939 N.W.2d 50, 58 (Iowa 2020) ("[E]ven if the privilege protection in rule 5.1101(*b*) is not directly applicable to grand jury proceedings, we would hold that these firmly established common law doctrines of work-product protection and attorney–client privilege apply to grand jury proceedings."). It would be odd for the Auditor to have access to documents for an audit of an entity that the attorney general cannot access for a criminal investigation of the same entity. *See State v. Iowa Dist. Ct.*, 6 N.W.3d 723, 727 (Iowa 2024) ("A criminal investigation that intrudes into privileged

attorney–client communications may raise constitutional concerns."). Indeed, while there are exceptions to the attorney–client privilege—like waiver and the crime-fraud exception—that arise out of *the client's actions or status*, the Auditor cites no other example of an exception based on the identity of the third party requesting the documents.

Because the common law attorney–client privilege has such an enduring and universal role in our legal system, we conclude that legislation to displace it must be explicit. Section 11.41 is not. It does not say that the Auditor may obtain attorney–client privileged materials or even mention that privilege. True, section 11.41 gives the auditor access to "all papers, books, records, and documents" subject to a list of exceptions that does not include attorney–client privileged communications. Iowa Code § 11.41(2). But in similar fashion, the Open Records Act confers access to "all records" subject to a list of exceptions that doesn't include attorney–client privileged communications, *see id.* §§ 22.1(3), .7, and we have still held that the privilege applies.

As for the Auditor's contention that section 11.41(3) expressly gives him access to "confidential" documents, we find persuasive a decision from Louisiana, *Louisiana Department of Insurance v. Theriot*, 64 So. 3d 854 (La. Ct. App. 2011). In that case the Louisiana Legislative Auditor conducted an audit of the Louisiana Department of Insurance. *Id.* at 856. The department went to court to establish, among other things, that the attorney–client privilege applied. *Id.* at 857. The auditor countered that his statutory authority allowed him to examine "all" records, "confidential or otherwise." *Id.* at 860 (quoting La. Stat. Ann. § 24:513(I) (2008)). The Louisiana Court of Appeal disagreed with the auditor and upheld the department's position that this language did not give the auditor

access to attorney–client communications. *Id.* at 861–62. The court explained,

> Had the legislature intended privileged information to be included in LSA–R.S. 24:513 I, it would have said "confidential, privileged, or otherwise," and not just "confidential or otherwise." Information that is privileged is always confidential, but confidential information is not always privileged. When the legislature intends for privileged information to be overridden by statute, the statute clearly indicates that the privilege is trumped by the statute. In the present case, there is no indication that the statute in question is specifically intended to supplant any privilege. Due to the importance of the attorney–client privilege, any doubt as to whether privilege should be encompassed by the words "confidential or otherwise" should be resolved in favor of the two words' separate natures in order to preserve the privilege.

*Id.* at 862.

As in Louisiana, the Auditor in Iowa is expressly given access to records required by law to be kept confidential but not to records that are covered by the attorney–client privilege. *See* Iowa Code § 11.41(3). Confidential and privileged are not the same thing, and we conclude that section 11.41(3) generally overrides confidentiality status but not the attorney–client privilege.

We also note that Iowa Code section 11.52 authorizes the Auditor to apply to the district court for enforcement of a subpoena "as provided by law in the matter of taking depositions." *Id.* § 11.52. Iowa Rule of Civil Procedure 1.517(1)(*b*)(2) is that mechanism for compelling a discovery response, which the Auditor sought to do here. But the scope of discovery thereunder is limited to matters that are "not privileged." Iowa R. Civ. P. 1.503(1). This lends further support to our conclusion that the Auditor lacks authority to obtain attorney–client privileged communications.

Finally, we recognize that the relevant statutes are not the same, but we note that in *Office of Hawaiian Affairs v. Kondo,* the Supreme Court of Hawaiʻi also recently rejected a contention by the Hawaiʻi State Auditor that his

subpoena authority extended to the attorney–client communications of a state agency. 528 P.3d 243, 251–53 (Haw. 2023). The court reasoned, in part, that "[t]he Auditor's powers and the attorney–client privilege can coexist" and observed that "[t]he laws are not explicitly contrary or inconsistent." *Id.* at 251. So too here.

**C. Disposition of This Appeal.** We now must resolve this appeal. The modified order of the district court indicated that the court planned to proceed with an in camera review to separate materials covered by the attorney work-product privilege (which would not be produced) from materials covered by the attorney–client privilege (which would be produced). As a preliminary matter, the court ordered an evidentiary hearing to better understand the scope of the reaudit and the information believed by the Auditor to be relevant.

Because we have reversed the district court's determination that communications otherwise shielded by the attorney–client privilege can be produced to the Auditor, and that determination undergirds the district court's ruling, we are reversing the district court's ruling and remanding this case for reconsideration of the next steps in this litigation.[1]

**V. Conclusion.**

We reverse the order of the district court and remand for further proceedings consistent with this opinion.

**District Court Ruling Reversed and Case Remanded.**

All justices concur except Waterman, J., who takes no part.

---

[1]In their briefing, both the Auditor and the City discuss a different lawsuit (not filed by the Auditor) in which the Scott County District Court conducted an in camera review of two of the relevant closed sessions of the city council and determined that they were covered by the attorney–client privilege. Again, we leave it to the district court to determine what actions it will take in this case in light of our decision.